IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE HALL,** | : | **Civil No.  1:22-CV-1838** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

In the instant case we are called upon to further consider one of the last lingering questions which followed a tidal change in the legal status of Social Security Administrative Law Judges (ALJs) under the Appointments Clause to the United States Constitution. In this field we most assuredly do not write upon a blank slate. Quite the contrary, the question of whether these ALJs were properly appointed was first foreshadowed in 2018 by the United States Supreme Court in

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Lucia v. Sec. & Exch. Comm'n, 585 U.S. 237, 251, 138 S. Ct. 2044, 2055, 201 L. Ed. 2d 464 (2018), where the Court held that the appointment process used to appoint SEC administrative law judges did not comport with the Constitution's Appointments Clause and further concluded that the "appropriate" remedy for an adjudication tainted with an appointments violation was a new hearing before a different and properly appointed ALJ. Id. By 2020, the Supreme Court's rationale in Lucia had been extended by the Third Circuit to Social Security ALJs along with the remedy mandated by the Supreme Court for Appointments Clause violations; that is, "new hearings before constitutionally appointed ALJs other than those who presided over Appellees' first hearings." Cirko on behalf of Cirko v. Comm'r of Soc. Sec., 948 F.3d 148, 159–60 (3d Cir. 2020).

The instant case now poses an additional question which is directly related to the rationale for the rule requiring appointment of a new and different ALJ to hear a case following an Appointments Clause violation: What course should we adopt following Lucia, Cirko and their progeny if the new and properly appointed ALJ incorporates material aspects of the stated reasoning set forth in the prior, tainted adjudication of an improperly appointed ALJ when deciding a claimant's case?

In the instant case, the plaintiff, Michelle Hall, initially had her case heard and decided by an ALJ who was not properly appointed under the Constitution's

2

Appointments Clause. Recognizing this fundamental structural error, that tainted decision was set aside, and the case was reassigned to a different, properly appointed ALJ for a new analysis which would be untainted by the initial adjudication. However, this second ALJ decision fell prey to the same type of error which the mandatory reassignment of cases decided in violation of the Appointments Clause was designed to avoid. These reassignments were intended by the courts to avoid an adjudication tainted by an Appointments Clause violation. However, in the instant case, the reassigned ALJ expressly adopted much of the prior vacated decision. In lieu of a new, independent analysis of the evidence, the reassigned ALJ simply embraced many of the factual findings set forth in the initial, vacated decision stating that the ALJ "generally agrees with the reasoning set forth therein." (Tr. 23). Having embraced this prior, vacated decision's reasoning, the most recent ALJ decision reached a problematic outcome:  In a case governed by the treating source rule, the ALJ rejected two treating source opinions in favor of fashioning a residual functional capacity for Hall which was unmoored to any medical opinion.

In our view this was not the process or outcome contemplated by Lucia, Cirko and its progeny. These decisions clearly contemplated that new hearings and decisions entered by properly appointed ALJs following Appointment Clause remands would stand on their own without reference to any of the analysis engaged

3

in during a prior, invalid proceeding conducted by an actor who had not been properly appointed under the Constitution. Therefore, we join those courts which have held that it is error for an ALJ hearing a case following an Appointments Clause remand to substitute mere agreement with or reliance upon the prior vacated decision for freestanding independent analysis of the claimant's impairments. Accordingly, we will remand this case for further consideration by the Commissioner.

## II.   **Factual Background and Procedural History**

### A. **Hall's Medical Impairments and the Medical Opinion Evidence**.

On July 31, 2015, and August 7, 2015, the plaintiff, Michelle Hall, applied for disability insurance benefits and supplemental Security income pursuant to Titles II and XVI of the Social Security Act. (Tr. 146). Hall initially claimed an onset of disability in 2014, an alleged onset date which was later amended to June 1, 2016. (Id.) In these applications Hall contended that she was disabled due to the combined effects of a cascading array of disabilities including osteoarthritis of the bilateral knees status post replacement, degenerative disc disease, fibromyalgia, trochanteric bursitis of the left hip, rheumatoid arthritis, bilateral plantar fasciitis, hypertension, asthma, anxiety, depression, and opioid use disorder. (Tr. 19). Hall was born on September 8, 1974, and was 40 years old on the alleged disability onset date, making her a younger worker under the Commissioner's regulations. After a decade of

4

litigation, she is now 51 years old. Hall reported that she has completed two years of college and, therefore, had at least a high school education. (Tr. 26).

Having filed her disability application prior to March 2017, Hall's case was governed by the Commissioner's "treating physician" rule. This rule provided for a hierarchy of medical opinions with the views of treating sources at the apex of this hierarchy. Under these regulations:

> A treating physician's medical opinion is to be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). Even when a treating physician's opinion is not given controlling weight, it is entitled to "great weight, especially when [it] reflect[s] expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' " Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir.2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)). Finally, in rejecting a treating physician's opinion, an ALJ is not permitted to make speculative inferences from medical reports; the ALJ must reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" as opposed to his or her own credibility judgments, speculation or lay opinion. Id. at 318 (quoting Plummer, 186 F.3d at 429).

Krizon v. Barnhart, 197 F. Supp. 2d 279, 287 (W.D. Pa. 2002).

In this case, Hall's primary treating physician, Dr. Joseph Stella, twice opined that her physical impairments were disabling. Initially, in June of 2017, Dr. Stella opined that Hall was totally disabled by her osteoarthritis and degenerative disc disease. (Tr. 678-681). Later, in June of 2021, Dr. Stella provided a second, more

5

fulsome, treating source opinion describing the degree to which Hall's medical impairments were disabling. (Tr. 3644-3646). In this opinion, Dr. Stella stated that Hall would be off task for more than 25% of the work day; could sit, stand and walk for less than two hours during the day; would need to take as many as six unscheduled breaks during the day for up to 45 minutes each; could never lift any weights of ten pounds or more; was severely limited in times of grasping, feeling, and reaching; and would likely miss three days or more of work each month due to her impairments. (Id.)

Notably, with respect to Hall's physical limitations, the administrative record does not reflect any countervailing views from consulting, examining experts or state agency physicians. Thus, in a case governed by the "treating physician" rule Dr. Stella's treating source opinions stands almost entirely alone.

### B. **Procedural History—The First ALJ Decision**

Hall's case was initially heard in 2018 by an ALJ who was not properly appointed under the Appointments Clause of the United States Constitution. On June 6, 2018, this ALJ entered a decision denying Hall's application for benefits. (Tr. 143-161). In this decision, the ALJ gave little weight to the treating source opinion of Dr. Stella, (Tr. 158), and instead fashioned a limited light work residual functional capacity (RFC) assessment for Hall which was unsupported by any competent

6

medical opinion. (Tr. 153). Having unilaterally arrived at this RFC assessment, the ALJ concluded that Hall could not perform her past relevant work but could do other jobs which existed in substantial numbers in the national economy. (Tr. 159-161). Accordingly, the ALJ denied this claim. (Id.)

## C. **Procedural History—Agency Remand and Second ALJ Decision**

Hall appealed this ruling to the Social Security Appeals Council arguing, in part, that the residing ALJ had not been properly appointed under The Constitution's Appointments Clause. On December 9, 2019, the Appeals Council agreed, and remanded this case for a new hearing before a different, and properly appointed ALJ, stating:

> The claimant's representative raised a challenge under the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2, to the manner in which the Administrative Law Judge was appointed. This case is remanded to a different Administrative Law Judge. Any Appointments Clause defect is cured by this remand because, on July 16, 2018, the Acting Commissioner of Social Security ratified all Administrative Law Judge appointments and approved them as her own under the Constitution.
>
> In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 168-169).

7

A second ALJ hearing conducted by a constitutionally appointed hearing officer was held on April 28, 2021. (Tr. 35-79). At this hearing, the ALJ emphasized for the parties that he was "not bound by any prior determination. I'm going to make my own decision. My decision will be based on my consideration of the entire record . . . ." (Tr. 38). Ms. Hall also testified, describing the severe pain, numbness and impairment she experienced due to her arthritis and degenerative disc disease. (Tr. 48-51). In addition, Hall explained that she was no longer able to undertake many activities of daily living but relied instead upon her children for help dressing, cooking, shopping and doing housework. (Tr. 60-68). At this second proceeding, Hall also submitted a June 2021 supplemental medical opinion from her treating physician, Dr. Stella, who opined that Hall would be off task for more than 25% of the work day; could sit, stand and walk for less than two hours during the day; would need to take as many as six unscheduled breaks during the day for up to 45 minutes each; could never lift any weights of ten pounds or more; was severely limited in times of grasping, feeling, and reaching; and would likely miss three days or more of work each month due to her impairments. (Tr. 3644-3646). Once again there was no countervailing consulting examining source or state agency physician opinion stating that Hall had greater physical capabilities.

8

Following this hearing, on September 7, 2021, the ALJ entered a decision denying Hall's claim for benefits. (Tr. 13-27). In this decision, the ALJ first found that Hall met the insured status requirements of the Social Security Act through March 31, 2021, and had not engaged in substantial gainful activity since September 26, 2014, the alleged onset date. (Tr. 18). At Step 2 of this sequential analysis the ALJ found that Hall suffered from the following severe impairments: osteoarthritis of the bilateral knees status post replacement, degenerative disc disease, fibromyalgia, trochanteric bursitis of the left hip, rheumatoid arthritis, bilateral plantar fasciitis, hypertension, asthma, anxiety, depression, and opioid use disorder. (Tr. 19). At Step 3 the ALJ concluded that none of these impairments met a listing requirement. (Tr. 19-22).

Between Steps 3 and 4, the ALJ fashioned the following RFC for Hall, stating:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: The claimant must be given the opportunity to alternate between sitting and standing at least every 30 minutes. The claimant is limited to occasional stooping, kneeling, crouching, and climbing on ramps and stairs, but never balancing (as that term is defined in the DOT), never crawling, and never climbing on ladders, ropes, or scaffolds. She must avoid unprotected heights and dangerous moving machinery. She must avoid overhead reaching with the bilateral upper extremities. She is limited to no more than frequent reaching in all other directions with the bilateral upper extremities. She is limited to no more than occasional use of foot controls. She must avoid concentrated exposure to dusts, fumes, gases,

and other pulmonary irritants. She must avoid exposure to extreme temperatures, extreme humidity, wetness, or vibration. She is limited to work involving no more than a reasoning level of 2 as defined in the DOT, but no fast-paced assembly line type work.

(Tr. 22).

In fashioning this limited light work RFC for Hall the ALJ once again afforded little weight to Dr. Stella's treating source opinions. (Tr. 24). The ALJ also candidly acknowledged that this RFC was entirely unmoored to any medical opinions, observing that "the undersigned does not find any of the medical opinions persuasive." (Tr. 25).

Yet, while the ALJ found no medical opinions persuasive, this decision indicated that the ALJ's findings were largely shaped by the initial, procedurally tainted adjudication of the first, improperly appointed ALJ. Indeed, the ALJ described the persuasive power which he gave this prior adjudication in terms which seemed to largely adopt those prior findings, stating:

> The claimant's medical history is set forth in detail in the initial decision (6A). While the undersigned did not simply adopt the residual functional capacity set forth in the prior decision, the undersigned generally agrees with the reasoning set forth therein. Thus, while the undersigned examined the entire period at issue, the following discussion will focus primarily on the period following the prior ALJ decision.

(Tr. 24).

After substituting agreement with this prior decision for any specific factual analysis of Hall's impairments prior to 2019, the ALJ concluded that, while Hall could not perform her past relevant work, she could undertake other jobs which existed in substantial numbers in the national economy. (Tr, 25-27). Accordingly, the ALJ denied this claim. (Tr. 27).

This appeal followed. (Doc. 1). On appeal Hall challenges the ALJ's evaluation of the sole treating source opinion, Dr. Stella's reports which indicated that Hall was completely disabled. Hall also contends that the ALJ's analysis of her clinical records failed to address significant aspects of Hall's treatment history. In connection with these arguments Hall also asserts that the ALJ's apparent express reliance upon the procedurally tainted adjudication of the first, improperly appointed ALJ was improper.

Because we agree that the ALJ reached a potentially problematic outcome by, in part, apparently adopting the prior reasoning of an actor who was not properly appointed to consider her case, we will remand.

## III.    **Discussion**

As we have explained, one of the principal issues in this case relates to what the proper scope of the prophylactic remedy should be when a Social Security appeal is remanded due to an Appointments Clause challenge to the legitimacy of the initial

presiding officer. In particular, we must consider whether it is error for an ALJ hearing a case following an Appointments Clause remand to substitute mere agreement with or reliance upon the prior vacated decision for freestanding independent analysis of the claimant's disability. This requires consideration of the teachings of Lucia, Cirko and their progeny.

A. **The Lessons Learned from *Lucia, Cirko* and Their Progeny**

Our analysis begins in 2018, when the United States Supreme Court held that the ALJs appointed by the Securities and Exchange Commission ("SEC") are "Officers of the United States" and had not been properly appointed under the Appointments Clause. Lucia, 138 S. Ct. at 2053-55. The Court found that these ALJs exercised "significant discretion" in carrying out "important functions," and were required to be appointed by the President, a court of law, or a department head. Id. Because the SEC ALJs had not been properly appointed under the Constitution, the Court remanded the case for consideration by a different constitutionally appointed ALJ. Id. at 2055. The Supreme Court's decision also prescribed in the first instance what the remedy should be for this Appointments Clause violation. Specifically, the Court found that the case would not be remanded for consideration by the ALJ who initially heard that case, "even if he has by now received (or receives sometime in the future) a constitutional appointment," because the Judge "ha[d] already both

12

heard Lucia's case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he had not adjudicated it before." Id.

Following Lucia, and in response to an executive order suggesting that "at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause," Exec. Order No. 13843, 83 FR 32755 (July 10, 2018), the Acting Commissioner of Social Security reappointed the Agency's ALJs in a manner which comported with the requirements of the Constitution. See SSR 19-1p, 2019 WL 1324866 (Mar. 15, 2019). Then, in early 2020, the Court of Appeals for the Third Circuit provided us with further guidance regarding how we should navigate this sea change in the method by which ALJs were appointed. In Cirko on behalf of Cirko v. Comm'r of Soc. Sec., 948 F.3d 148 (3d Cir. 2020) the court of appeals first held that Social Security claimants need not exhaust such challenges under the Appointments Clause in their administrative proceedings. Id. at 159. The Court reasoned that requiring exhaustion of this issue would compromise the ability of claimants to protect their rights:

> First, an exhaustion requirement for Appointments Clause claims would impose an unprecedented burden on SSA claimants who are subject, not to an adversarial process, but to an inquisitorial process. While exhaustion may be broadly required in an agency where "it is usually 'appropriate under [the agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there," Sims, 530 U.S. at 109, 120 S.Ct. 2080 (alteration in original) (quoting

13

United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 36–37, 73 S.Ct. 67, 97 L.Ed. 54 (1952)), the SSA's inquisitorial system does not fit that description. In the SSA, "[t]he [agency], not the claimant, has primary responsibility for identifying and developing the issues," Sims, 530 U.S. at 112, 120 S.Ct. 2080, such that the ALJ takes "an active investigatory role" and "shoulders a statutory obligation to obtain evidence," "to order medical testing," and "to request witnesses," Jon C. Dubin, Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings, 97 Colum. L. Rev. 1289, 1303 (1997).

…..

The need to protect those individual rights is especially acute, however, where, as here, claimants' "physical condition and dependency on the disability benefits" are at issue. Mathews v. Eldridge, 424 U.S. 319, 331, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Disability benefits are usually claimants' primary source of income—highlighting the need for both the appearance and reality of fair adjudicators appointed impartially under the Appointments Clause and making the "nature of [a disability] claim" an "important factor[ ]" in determining whether to take federal jurisdiction over a procedurally flawed administrative appeal, id. at 331 n.11, 96 S.Ct. 893. Indeed, we have said that in such cases "the claimant's interest in having the constitutional issue resolved promptly is so great that further deference to agency procedures is inappropriate." Mattern v. Mathews, 582 F.2d 248, 253 (3d Cir. 1978).

Id. at 156-57.

The Third Circuit then prescribed in the first instance what the remedy should be for an Appointments Clause violation, affirming the district court's decision to remand the cases to the Social Security Administration "for new hearings before constitutionally appointed ALJs *other than those who presided over Appellees' first*

14

*hearings.*" Id., at 159-60 (emphasis added). Thus, following Lucia and Cirko it was clear that, at a minimum, the remedy for an Appointments Clause violation required an entirely new and independent review of the plaintiff's claim by a properly appointed ALJ who was not tainted in any way by the prior procedurally tainted decision.[2]

The rationale for this sweeping prophylactic relief was grounded in several considerations. At the outset, courts have recognized the importance of providing complete relief to persons aggrieved by "structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional

---

[2]Digiondomenico v. Kijakazi, 656 F. Supp. 3d 527, 531 (M.D. Pa. 2023) (collecting cases); Denicola v. Comm'r of Soc. Sec., 2021 WL 735853 at *5 (M.D. Pa. Feb. 25, 2021) ("the remedy afforded in Lucia—rehearing before a new ALJ—suggests that if an improperly appointed ALJ presides over an SSA claimant's hearing, an Appointments Clause violation has occurred, *regardless of whether the ALJ is properly appointed before issuing a final decision.*") (emphasis added). Brown v. Saul, 2020 WL 6566221, at *4 (W.D. Pa. Nov. 9, 2020) (remanding for rehearing before a new ALJ and holding that after-the-fact ratification of ALJs is "not consistent with what the Administration said it would do in SSR 19-1p" and "inconsistent with the holding in Lucia"); Morris v. Comm'r of Soc. Sec., 2020 WL 3104931, at *1-2 (W.D. Pa. June 11, 2020) (remanding for rehearing before a new ALJ because the ALJ who decided the case "was not constitutionally appointed for the entirety of the relevant time period"); Bullard v. Saul, 2020 WL 2615651, at *1 (E.D. Pa. May 22, 2020) ("[E]ven though Bullard's third administrative hearing took place after the ALJ was constitutionally appointed, her consideration of Bullard's claim . . . was improper"); Culclasure v. Comm'r of Soc. Sec. Admin., 375 F. Supp. 3d 559, 574 (E.D. Pa. 2019).

15

rights and the structural imperative of separation of powers." Cirko, 948 F.3d at 153. Because Appointments Clause violations implicate significant constitutional rights, courts have declined to embrace expedient solutions when addressing these claims. Instead, courts have treated decisions entered by officers who were not constitutionally competent to rule as nullities and have fashioned relief designed to ensure that these prior, constitutionally infirm decisions do not prejudice the claimants' rights on remand.

One such expedient adopted by some ALJs who were reassigned cases following mandatory Appointments Clause remands was to endeavor to embrace or adopt the reasoning of the first constitutionally invalid ALJ decision. Some courts that considered this practice have rebuffed these efforts, finding that the decisions of properly appointed ALJs, which denied Social Security claimant's application for supplemental security income (SSI) benefits, were nonetheless tainted by constitutional violations arising from these ALJs' reliance on prior decisions of different ALJs, whose appointments were not ratified by the Acting Commissioner under the Appointments Clause. See e.g., Duffy v. Comm'r of Soc. Sec. Admin., No. CV-23-01838-PHX-JJT, 2025 WL 1502613, at *3 (D. Ariz. May 27, 2025); Noriega v. Comm'r of Soc. Sec. Admin., 657 F. Supp. 3d 1219, 1226-27 (D. Ariz. 2023). But see Edith S.-L. v. Comm'r of Soc. Sec., No. 2:21-CV-00151, 2022 WL 22296947,

16

at *16 (E.D. Va. Feb. 2, 2022), <u>report and recommendation adopted sub nom.</u> <u>Edith</u>

<u>S.-L. v. Kijakazi</u>, No. 2:21CV151, 2022 WL 4472451 (E.D. Va. Sept. 26, 2022).

In this setting courts that have remanded ALJ decisions have acknowledged

that, consistent with <u>Lucia</u>:

> [T]he agency cannot substitute out a disqualified judge in name only, as when a replacement ALJ rubber-stamps or bows to a prior defective decision. <u>See, e.g., Mygual J. v. Kijakazi</u>, No. CV 22-7835-KK, 2023 U.S. Dist. LEXIS 208077, at *12 (C.D. Cal. Nov. 17, 2023) (reversing because the new ALJ "fail[ed] to conduct his own assessment of Plaintiff's records," relying instead on "the prior ALJ's finding"); <u>Jennifer H. v. Commissioner of Social Security</u>, No. 2:22-CV-1845-DWC, 2023 WL 6571418, at *2 (W.D. Wash. Oct. 10, 2023) ("If a new ALJ could rely entirely on—or even give deference to—the prior ALJ's analysis, afflicted claimants would not get the [remedy] *Cody* purported to give them."); <u>Noriega v. Commissioner of Social Security Admin.</u>, 657 F. Supp. 3d 1219, 1222, 1226 (D. Ariz. 2023) (reversing because the new ALJ "relied upon the improper and unconstitutional 2017 decision," which that ALJ erroneously thought "created a presumption of continuing nondisability"). <u>But cf. Kimberly D. v. Commissioner of Social Security</u>, No. C22-5588-BAT, 2023 WL 3001405, at *3 (W.D. Wash. Apr. 19, 2023) (affirming decision of "a different ALJ" despite the two ALJs' decisions sharing "similarities and, in places, identical language and analyses").

<u>Elizabeth T. v. O'Malley</u>, 728 F. Supp. 3d 1158, 1163 (S.D. Cal. 2024).

These cases, which we find persuasive, recognize a fundamental truth: This

growing body of Appointments Clause decisions entitle plaintiffs "to an *independent*

*decision* issued by a different ALJ. If a new ALJ could rely entirely on—or even

give deference to—the prior ALJ's analysis, afflicted claimants would not get the

17

remedy" promised by <u>Lucia</u> and its progeny. <u>Jennifer H. v. Comm'r of Soc. Sec.</u>, No. 2:22-CV-1845-DWC, 2023 WL 6571418, at *2 (W.D. Wash. Oct. 10, 2023) (cleaned up).

B. **This Case will be Remanded.**

In this case, the ALJ reached a problematic conclusion through problematic means. At the outset, the ALJ's substantive decision is problematic since, in a case governed by the "treating physician" rule, the ALJ entirely discounted the opinions of Hall's treating physician, the only physician who provided a comprehensive assessment of the severity of Hall's impairments. The ALJ then fashioned an RFC for Hall which was entirely unmoored to any medical opinion. We have consistently held that when an ALJ discounts a medical consensus and fashions an RFC which is unsupported by any persuasive medical opinion, the ALJ must clearly articulate the evidentiary path which led to this conclusion. The failure to do so often compels a remand. <u>See e.g.</u>, <u>McCleary v. Bisignano</u>, No. 4:25-CV-26, 2026 WL 625113, at *6 (M.D. Pa. Mar. 5, 2026); <u>O'Neill v. Bisignano</u>, No. 4:24-CV-2156, 2025 WL 3469271, at *1 (M.D. Pa. Dec. 3, 2025).

Moreover, the ALJ appears to have reached this problematic substantive outcome through a problematic process, since the ALJ's decision appears to rely upon and largely adopt findings made by the prior, improperly appointed ALJ who

18

presided over Hall's initial administrative hearing. Not only does this practice fall short of the level of articulation generally required to sustain a decision which eschews all of the treating source opinions in favor of an RFC which is bereft of any medical opinion support; it also runs afoul of the guiding principles behind <u>Lucia</u> and <u>Cirko.</u> These cases promise Social Security claimants decisions which are not tainted by any violation of their constitutional rights under the Appointments Clause. When a newly appointed ALJ simply adopts the reasoning of an officer who was not properly appointed to hear claimants' cases the claimants do not receive the remedy which the law should afford to them. In such instances remand is appropriate.

Nor can we treat this error as harmless on the facts of this case. In this regard, "we apply harmless error analysis cautiously in the administrative review setting." <u>Fischer–Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005). Thus:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. <u>Seaman v. Soc. Sec. Admin.</u>, 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" <u>Hyer v. Colvin</u>, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

<u>Harrison v. Berryhill</u>, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), <u>report and recommendation adopted,</u> No. 3:17-CV-0618, 2018 WL

19

2049924 (M.D. Pa. May 2, 2018). On the unique facts of this case, we find that the ALJ's problematic decision to reject the sole comprehensive medical opinion offered here, which was provided by Hall's treating source, and instead fashion an RFC unmoored to any medical opinion, while simultaneously affording persuasive power to findings made by an officer who was not legally authorized to rule on this disability claim affects the perceived fairness, integrity, or public reputation of these proceedings. Therefore, these errors cannot be deemed harmless and a remand is appropriate here.

Yet, while we reach this conclusion on the unique facts of this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the newly appointed ALJ on remand.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration of the plaintiff's application.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

20

DATED: July 23rd, 2026